Vincent ESPOSITO

v.

John R. MANSON, Commissioner, Connecticut Department of Correction.

Domenic CLEMENTE

v.

John R. MANSON, Commissioner, Connecticut Department of Correction.

Louis DELLA CAMERA

v.

John R. MANSON, Commissioner, Connecticut Department of Correction.

Civ. Nos. H–74–243, H–74–249, H–74–299.

United States District Court,
D. Connecticut.

Jan. 10, 1975.

---

John R. Williams, New Haven, Conn., for Esposito.

Charles G. Albom, New Haven, Conn., for Clemente.

Anthony Lasala, New Haven, Conn., for Della Camera.

Jerrold H. Barnett, Asst. State's Atty., New Haven, Conn., for defendant.

RULING ON RESPONDENT'S MO-
TION TO VACATE NOTICES OF
DEPOSITION AND TO QUASH
THE SUBPOENA DUCES TECUM
DIRECTED TO ARNOLD MAR-
KLE, STATE'S ATTORNEY

BLUMENFELD, District Judge.

The petitioners in these companion habeas corpus cases challenge their state court convictions on charges of rape, indecent assault, sodomy, robbery with violence and aggravated assault.[1] The two principal issues developed in their petitions are based upon their right under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) to exculpatory evidence in the possession of the prosecutor. They claim that their right to such material was violated by the prosecutor's refusal to turn over to them the statements made by the complaining witnesses to the police and his failure to reveal information which he allegedly had that certain individuals, originally charged with the same crimes and not tried with the petitioners, had valid alibis and thus had been misidentified by the complaining witnesses.

The petitioners have noticed the deposition of Arnold Markle, State's Attorney for the State of Connecticut for New Haven County at New Haven and prosecutor at their trial, and have subpoenaed him to testify at an oral deposition and bring with him the files of those persons who were originally charged, but never tried. The respondent has moved to vacate the notices of deposition and quash the subpoena on the grounds that the testimony sought to be elicited and the files are relevant only to an issue as to which no state exhaustion has taken place, see 28 U.S.C. § 2254(b) (1970), that is, that the prosecutor had unrevealed information regarding the alibis of the other individuals charged with the crimes but never tried.[2] Secondly, he claims that even if the petitioners have exhausted their remedies with regard to that issue, they have failed to justify the extraordinary procedure of deposing a State's Attorney and inspecting his files.

As all parties are aware, the Federal Rules of Civil Procedure are not applicable in habeas corpus proceedings. Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969); United States ex rel. Sero v. Preiser, 506 F.2d 1115 (2d Cir., 1974). However, as the Supreme Court has recognized:

"[I]n appropriate circumstances, a district court, confronted by a petition for habeas corpus which establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures, including interrogatories,

---

1. These charges grew out of an incident in Wallingford in April 1969 in which two teen-age girls and a boy were subjected to numerous sexual assaults by members of a motorcycle gang.

2. The respondent has filed a motion to dismiss this claim for failure to exhaust state remedies and that motion is *sub judice*.

reasonably fashioned to elicit facts necessary to help the court to 'dispose of the matter as law and justice require.' 28 U.S.C. § 2243." Harris v. Nelson, *supra*, 394 U.S. at 290, 89 S. Ct. at 1086.

■ This court is persuaded that the petitioners have established a "prima facie" case with regard to the failure of the prosecutor to turn over to them the statements of the complaining witnesses.[3] *See* United States v. Badalamente, 507 F.2d 12 (2d Cir., 1974). As to that issue, the respondent admits that state remedies have been exhausted.[4] As that issue develops, it may well become relevant to know whether there was material contained in those statements, whether misidentifications or otherwise, which the prosecutor knew or had reason to believe at the time of trial was inaccurate. The prosecutor's good or bad faith in withholding exculpatory evidence from defendants becomes relevant where no demand is made by the defendants for the material, a claim advanced by the respondent here.[5] *See* United States v. Keogh, 391 F.2d 138 (2d Cir. 1968). If the prosecutor knew that portions of those statements were inaccurate, then he could be charged with knowledge of their "high value," United States v. Keogh, *supra*, 391 F.2d at 147, to the petitioners, as the credibility of the complaining witnesses was a critical issue at trial.[6]

Having established that the evidence sought to be elicited from Mr. Markel may be critical to an issue as to which exhaustion has occurred, it is necessary to determine in what manner the petitioners should be allowed to proceed with their discovery. This court is sensitive to the concerns of the respondent that a State's Attorney not be regularly subjected through habeas corpus proceedings to the inconveniences of providing oral testimony at depositions and that his confidential files not be subjected to fishing expeditions by habeas petitioners. Therefore, at this stage, when the petitioners are only harboring suspicions, the court will require Mr. Markle to answer interrogatories directed to the issue of what he knew and what was in his files at the time of the petitioners' trial with regard to possible inaccuracies contained in the complaining witnesses' statements.[7] Following receipt of the answers to those interrogatories, the pe-

---

3. The statements have been turned over to this court pursuant to its order and, with the agreement of the respondent, have now been made available to the petitioners.

4. The respondent does claim that the petitioners waived their rights to those statements. This is an argument, however, which goes to the merits of the petitioners' claim and need not be discussed here. *See* note 5, *infra*.

5. The respondent argues that the petitioners "waived" whatever rights they had to these materials under Brady v. Maryland, *supra* by only insisting upon their production at trial on the basis of the state Jencks Act, Conn. Gen.Stat.Ann. § 54–86b (Supp.1974), which the trial court considered to be unconstitutional. (The judgment of the trial judge was affirmed by the Connecticut Supreme Court, State v. Clemente, 36 Conn.L.J. 1 (July 2, 1974); State v. Esposito, 36 Conn. L.J. 17 (July 2, 1974); State v. Della Camera, 36 Conn.L.J. 19 (July 2, 1974).) Essentially, this is an argument that the petitioners failed to make a request for the production of exculpatory evidence. I need not rule upon the issue of "waiver" in deciding the instant motion. It is sufficient at this juncture, when issues and evidence are being developed for presentation at a hearing, that the prosecutor's good or bad faith is a potentially relevant issue.

6. The above discussion should not be interpreted as intimating any views as to the ultimate disposition of these cases on the merits.

7. In discussing the power of district courts to fashion appropriate discovery procedures in habeas corpus cases, the Supreme Court stated in Harris v. Nelson, *supra*, 394 U.S. at 300, 89 S.Ct. at 1091 (footnote omitted):
   "Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles of law.'"
   Fed.R.Civ.P. 26(b)(4)(A)(i), (ii) provides the procedure which must be followed by a

titioners may reapply to this court for whatever further discovery orders may then be necessary. *See generally* American Bar Association Project on Standards for Criminal Justice, Standards Relating to Post-Conviction Remedies, § 4.-5(b) (Approved Draft, 1968).

Accordingly, the respondent's motion to vacate the notices of deposition and to quash the subpoena duces tecum directed to Arnold Markle is granted and Mr. Markle is hereby directed to answer appropriate interrogatories submitted to him by the petitioners as set out above, and it is

So ordered.

party seeking discovery of the opinions of experts retained by the adverse party:

"(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate."

While this section is, of course, not squarely applicable to the instant case, its cautious approach towards the discovery of expert testimony provides a good model for proceeding with the discovery sought by the petioners. *Cf.* James v. Dilieto, Civ. No. N–74–247 (D.Conn., January 3, 1975).