Carson STEEL, Jr., #86750–132,
Petitioner,

v.

UNITED STATES of America and Irl E. Day, Warden, Federal Reformatory, El Reno, Oklahoma, Respondents.

Civ. No. 75–142.

United States District Court,
E. D. Oklahoma,
Civil Division.

July 14, 1975.

**42**

---

Carson Steel, Jr., pro se.

Robert D. McDonald, Muskogee, Okl., for respondents.

## ORDER

DAUGHERTY, Chief Judge.

The above-named petitioner is confined in the Federal Reformatory at El Reno, Oklahoma, by virtue of the judgment and sentence of the United States District Court for the Eastern District of Oklahoma in Case No. 27888, 400 F. Supp. 39. After a trial by jury he was convicted of the offense of bank robbery and on April 16, 1971 sentenced by the late Judge Edwin Langley to imprisonment for a period of 15 years. A direct appeal was perfected by the petitioner to the United States Court of Appeals for the Tenth Circuit which affirmed the judgment and sentence of the trial court. *United States v. Steel,* 458 F.2d 1164 (CA10 1972). The Amended Mandate of affirmance was filed in this court on May 26, 1972.

■■ In this, his second proceeding pursuant to the provisions of 28 U.S.C. § 2255, the basic argument of petitioner again is that he did not commit the offense. This issue, however, was determined by the jury and is not subject to review on collateral attack. *Wagen-*

*knecht v. Crouse,* 344 F.2d 920 (CA10 1965) and *United States v. Smith,* 407 F.2d 33 (CA2 1969). In his Motion for New Trial he attempted to support this same claim by producing the confession of one Ray Culp that he, Paul Miller and Eddie McCoy had robbed the bank rather than the three defendants in said Case No. 27888. The Motion for New Trial was denied by the trial court, which denial was affirmed on the direct appeal. In his prior 2255 he attempted to support this claim by presenting statements of his two co-defendants that they had robbed the bank with Paul Miller and a letter from Paul Miller admitting his participation. That motion was held to be without merit. This same material is now urged upon the court as grounds for relief in this proceeding. Issues determined adversely to a petitioner on direct appeal are not subject to collateral review in a 2255 proceeding. *Baca v. United States,* 383 F.2d 154 (CA10 1967). It is also the rule that in proceedings under 2255 controlling weight may be given the denial of a prior application when the same ground was determined adversely to the applicant in the prior proceeding, the prior determination was on the merits, and the ends of justice would not be served by reaching the merits of the subsequent application. *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

■■ In an apparent effort to circumvent the force of these rules the petitioner now attempts to place his same basic claim in the context of perjured testimony. He contends that his conviction was obtained by the use of the perjured testimony of Paul Miller and an identification witness. He alleges that such testimony was "elicited" by government officials. Before perjured testimony can provide grounds for the vacation of a conviction the petitioner must establish that the testimony was false, that it was material and that it was knowingly and intentionally used by the government to obtain a conviction. *McBride v. United States,* 446 F.2d 229

(CA10 1971). Herein any incentives provided by the government for the witness Miller to cooperate in testifying against the defendants was commendably developed at trial by the prosecution on direct examination. (Tr. 147 and 148). It was vigorously pursued on cross-examination. (Tr. 169–173 and 191). The witnesses' possible motives were fully before the jury for its consideration. The petitioner does not allege that the perjured testimony was knowingly, willfully and intentionally used by the prosecution. His allegations are therefore insufficient to impose any obligations upon the court to conduct an evidentiary hearing. *Harris v. United States*, 436 F.2d 591 (CA10 1971).

The petitioner does present for the first time a contention that the court coerced the jury into a verdict by the use of an "Allen Charge". A review of the record reveals this claim to be without merit. At the conclusion of the trial the jury was properly instructed by the court. Included in his general instructions was the admonition:

"Each of you, of course, will decide the case for yourself. But, you should do this only after careful consideration of the evidence with each other. The purpose of retiring to a separate place for your deliberations is so that you can and will discuss the matter among yourselves. And, it is right and proper, and the very heart of the jury system, in fact, for each of you to give serious consideration to the views of others, of your fellow jurors before deciding definitely on your own. And, if, after discussion, you feel that you should change the views which you had initially, of course, you should do so. But, when you return a verdict that verdict must represent your own decision individually as well as the decision of all of you collectively."

The jury subsequently returned to the courtroom and this transpired:

"THE COURT: Let the record show that the jury has returned to the courtroom, that the defendants are present in person and by their attorneys, and that the Government is present by the United States Attorney.

Mr. Rhodes, you are the foreman of the jury?

MR. RHODES: Yes, Your Honor.

THE COURT: I have your note which reads, 'hung jury'. I take it to mean that you feel that you have arrived at an impasse, and are not able to return a verdict as to any of these defendants. Now, I am not willing to accept a—I'm not willing to accept it as a fact, yet, that you are not able to arrive at a verdict. After a trial lasting three days, I think that two and a half hours of deliberations is an insufficient effort on the part of the jury to arrive at an agreement with respect to the charges against these defendants. But, I suspect, it's seven o'clock at night, now, and some of you live at a fairly substantial distance from the Court. I suspect that it would be a good deal more conducive to further productive deliberations if I would let you go home for the night and resume your deliberations in the morning. And, rather than—if I let you go to supper now, by the time you get back it would be eight o'clock, and that is going to be late for some of you and perhaps all of you. Rather than do that I'm going to excuse you until tomorrow morning at nine o'clock. I think that you can all be back here by nine o'clock. At that time I want you to return to the jury room. It will not be necessary to return to the courtroom here. But, I want you to return to the jury room.

Mr. Rhodes, when all of the jurors are in the jury room and no one else is in the jury room and not all of you, that is, when less than all of you are present, and if there is anyone else in the jury room you are not to begin your deliberations. When all of you are back and no one else is in the jury room with you, you as the foreman of the jury may begin your deliberations.

You should do so with an open mind, a willingness to review the evidence with each other again, and a willingness to continue to consider the views of each other with respect to the conclusions and deductions, inferences to be drawn from the evidence, and with a view to arriving at a verdict, if you can, which will not do violation to the individual opinions of any of you. In other words, a verdict with which all of you can agree. A substantial effort ought to be made in that direction if you possibly can. This is not intended to put pressure on anyone to agree to a verdict which he cannot accept as his own. It's intended to impress upon you the seriousness of a further effort on the part of all of you to decide this case with respect to these defendants. And, I think that you might be in a better frame of mind for doing that in the morning rather than continuing on to possibly midnight."

In *Munroe v. United States,* 424 F.2d 243, 247 (CA10 1970) the court stated:

"The instruction given here is not a typical 'Allen' instruction. In the Allen case the instruction stated in part, 'if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one * * *. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.' That instruction unequivocally put the burden of reexamination upon the minority. Unlike Allen, the instructions given here, in effect, were directed at both, the minority and majority, . . ."

■■ The substance of the supplemental instructions had been incorporated in the body of the original instructions as suggested in United States v. Wynn, 415 F.2d 135 (CA10 1969). The length of time a jury may be required to deliberate is a matter within the discretion of the trial judge. *Mills v. Tinsley,* 314 F.2d 311 (CA10 1963). Without more the period of deliberation cannot constitute coercion. *United States v. Caracci,* 446 F.2d 173 (CA5 1971). The court here imposed no rigid deadline on the jury's further deliberations. Cf. *Burroughs v. United States,* 365 F.2d 431 (CA10 1966) and *Goff v. United States,* 446 F.2d 623 (CA10 1971). The judge was careful to explain that his remarks were not to be construed as pressure upon any juror to give up his conscientiously held views. There was nothing coercive in his remarks. The comment of the Court of Appeals in *United States v. Winn,* 411 F.2d 415, 417 (CA10 1969) applies here:

". . . [T]here is no ritual of words for common law instructions in federal courts. The question is whether the language used was coercive, not whether the judge used the magic words. Appraising the instruction as a whole, in its context, we think the jury was given to understand that the judge had no intention to force any kind of verdict and if, after a little more deliberation, they were unable to reach a verdict, appropriate action would be taken. We cannot say that the words used were reversibly coercive."

There are no material issues of fact raised by petitioner's application for relief. The petitioner's application together with the other files and records in petitioner's prior proceedings in this court conclusively show that the petitioner is not entitled to relief. Therefore, there is no necessity for this court to hold an evidentiary hearing. *Semet v. United States,* 369 F.2d 90 (CA10 1966).

■ The petitioner has filed a request for an "enlargement of time" for the filing of a "Traverse" in order to permit him to take the written depositions of Shomo, Jackson and Miller. The broad discovery provisions of the civil rules are not applicable as a matter of right to the habeas petitioner. *Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.

2d 281 (1969). Moreover as evidenced by the foregoing analysis there are no material issues of fact and a traverse would serve no purpose in this case.

Accordingly it is ordered:

1. The petitioner's request for the appointment of counsel is denied by the court in its discretion.

2. The request for "an enlargement of time for filing a Traverse" and all other ancillary requests are denied.

3. The Motion pursuant to 28 U.S.C. § 2255 to vacate the judgment and sentence of this court in said Case No. 27888 is denied.