BARKETT, Circuit Judge,
dissenting:
This case highlights the difficulties in navigating AEDPA’s thicket of procedural brambles. While we must deal with the thorny constitutional and statutory questions before us, we also cannot lose sight of the underlying issue in this case. Simply put, the issue is whether Troy Anthony Davis may be lawfully executed when no court has ever conducted a hearing to assess the reliability of the score of affidavits that, if reliable, would satisfy the “threshold showing” for “a truly persuasive demonstration of actual innocence,” thus entitling Davis to habeas relief. Herrera v. Collins, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (quotation omitted).
In the affidavits, seven of nine key trial witnesses recanted their testimony which pointed to Davis as Officer MacPhail’s murderer. The two remaining non-recanting witnesses were Sylvester “Red” Coles, who was himself alleged to have been the shooter in affidavits, and Steve Sanders, who identified Davis at trial two years after the incident despite admitting to police immediately following the shooting that he would not be able to recognize the shooter.
The majority of the affidavits support the defense’s theory that, after Coles raced to the police station to implicate Davis, the police directed all of their energy towards building a case against Davis, failing to investigate the possibility that Coles himself was the actual murderer. For example, none of the photospreads shown to eyewitnesses even included a picture of Coles. Additionally, three affiants now state that Coles confessed to the killing. To execute Davis, in the face of a significant amount of proffered evidence that may establish his actual innocence, is unconscionable and unconstitutional.
The majority takes the position that we cannot permit Davis to bring his evidence before the district court because our discretion to do so is constrained by AEDPA. But AEDPA cannot possibly be applied when to do so would offend the Constitution and the fundamental concept of justice that an innocent man should not be executed. In this case, the circumstances do not fit neatly into the narrow procedural confines delimited by AEDPA. But it is precisely this type of occasion that warrants *828 judicial intervention. As Justice Fortas noted:
The scope and flexibility of the writ [of habeas corpus] — its capacity to reach all manner of illegal detention — its ability to cut through barriers of form and procedural mazes — have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.
Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).
BACKGROUND
The facts of this case center around the night of Friday, August 18 and the early morning of Saturday, August 19, 1989, in Savannah, Georgia. It is undisputed that “Red” Coles was harassing and following a homeless man, Larry Young, between a pool hall and a Burger King parking lot. Davis and Darrell “D.D.” Collins also were present during some portion of the harassment. Someone hit Young, nearby police officer Mark MacPhail responded, and someone shot MacPhail three times.
The police had no leads until Coles went to the police station the day after the murder, admitted that he was one of the three individuals involved in the altercation with Larry Young, and implicated Davis in the MacPhail shooting. There is no dispute that the police focused exclusively on Davis as a suspect because of Coles’s statement. The witnesses at trial primarily identified the shooter as the person wearing a white shirt. However, the totality of the evidence, including the affidavits, contains conflicting evidence about what color shirts Davis and Coles were wearing, with testimony that each was wearing a white shirt.
The two trial witnesses who claimed that Davis confessed to the shooting have since recanted in sworn affidavits.[1] Additionally, three witnesses who did not testify at trial have since submitted sworn affidavits stating that Coles confessed to them that he was the shooter, and one of the State’s trial witnesses submitted a sworn affidavit stating that Coles essentially confessed to him, but that he had not said anything sooner because he and Coles were related. Thus, no one at this time contends that Davis has ever confessed to the shooting; conversely, multiple witnesses maintain that Coles has confessed.
DISCUSSION
I. A Claim of Actual Innocence Is a Cognizable Constitutional Claim.
In Herrera, the Supreme Court assumed, “for the sake of argument ..., that in a capital case a truly persuasive demonstration of ‘actual innocence’ made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim.” 506 U.S. at 417, 113 S.Ct. 853. Without explicitly announcing a standard by which to judge such a claim, the majority stated that the required threshold showing of innocence “would necessarily be extraordinarily high,” in light of the disruptive effect of entertaining such a claim and the enormous burden on a state court of having to retry a case. Id. The majority then held that Herrera’s showing of innocence fell short of such a standard. Id. at 418-19, 113 S.Ct. 853.
*829 In a concurring opinion, Justice O’Con-nor, joined by Justice Kennedy, stated that, regardless of whether one used the “verbal formula” from the Eighth Amendment or Fourteenth Amendment, “the execution of a legally and factually innocent person would be a constitutionally intolerable event.” Id. at 419, 113 S.Ct. 853. Nonetheless, because the record “overwhelmingly demonstrate[d]” Herrera’s guilt, she concurred in the denial of relief. Id. at 421, 113 S.Ct. 853.[2] .
Justice Blackmun, joined by Justices Stevens and Souter, dissented from the denial of relief and explained that the majority’s discussion of the validity of a freestanding actual innocence claim was dictum because the Supreme Court decided the case based only on the assumption that Herrera’s claim was valid. Id. at 430, 113 S.Ct. 853. Justice Blackmun declared that “the Constitution forbids the execution of a person who has been validly convicted and sentenced but who, nonetheless, can prove his innocence with newly discovered evidence.” Id. at 431, 113 S.Ct. 853. He explained that the execution of an actually innocent person violated the Constitution’s ban on cruel and unusual punishment arid its guarantee of substantive due process. Id. at 431-37, 113 S.Ct. 853.
Between Justice O’Connor’s concurrence and Justice Blackmun’s dissent, five justices agreed that the execution of an actually innocent person would violate the Constitution. Consistent with the opinions of five justices in Herrera, I believe that the Eighth and Fourteenth Amendments prohibit the execution of an actually innocent individual.
With respect to the Eighth Amendment, it is absurd to suggest that executing a person for a crime of which he is innocent does not amount to cruel and unusual punishment. Indeed, the Supreme Court has held that execution violates the Eighth Amendment for several offenses comparatively less severe than murder, including rape. Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). The Court has also held that the execution of mentally retarded persons and juvenile offenders violates the Eighth Amendment because such persons are less criminally culpable. Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (mentally retarded persons); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (juvenile offenders).
Similarly, the execution of one who is actually innocent, but found legally guilty, clearly runs contrary to social consensus. As Justice Blackmun stated in his Herrera dissent, it is “crystal clear that the execution of an innocent person is at odds with contemporary standards of fairness and decency.” 506 U.S. at 431, 113 S.Ct. 853 (quotation omitted). Obviously, the execution of an actually innocent individual has nothing to do with the goals of criminal punishment. Such an execution would serve no retributive purpose nor have any deterrent value. See Kennedy v. Louisiana, 554 U.S.-, 128 S.Ct. 2641, 2661, 171 L.Ed.2d 525 (2008). On the contrary, the execution of an actually innocent individual undermines the legitimacy of the criminal justice system’s power to punish. See Herrera, 506 U.S. at 433-34, 113 S.Ct. 853 (Blackmun, J., dissenting) (noting that “the legitimacy of punishment is inextricably intertwined with guilt”).
Likewise, the Fourteenth Amendment’s Due Process Clause prohibits states from depriving any person of life or liberty without due process of law. “[S]ubstantive due process prevents the government from *830 engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty.” United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (quotations and citations omitted). “[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.” Tinker v. Beasley, 429 F.3d 1324, 1328 (11th Cir.2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).
Certainly, the execution of an actually innocent person would shock the conscience such that it runs afoul of the right to substantive due process. See Herrera, 506 U.S. at 430, 113 S.Ct. 853 (Blackmun, J., dissenting) (“Nothing could be more contrary to contemporary standards of decency or more shocking to the conscience than to execute a person who is actually innocent.”) (internal citations omitted). Justice Blackmun remarked that “[ejxecution of an innocent person is the ultimate arbitrary imposition” because it is one “from which one never recovers and for which one can never be compensated.” Id. at 437, 113 S.Ct. 853 (quotation and citation omitted).
I do not believe that any member of a civilized society could disagree that executing an innocent person would be an atrocious violation of our Constitution and the principles upon which it is based.
II. As the Constitution Prohibits the Execution of an Actually Innocent Individual, Habeas Relief Must Be Available to an Actually Innocent Individual Facing Execution.
The majority opinion does not consider whether federal habeas relief may ever be available for the actually innocent, but instead concludes that AEDPA prohibits this court from granting permission to file a second or successive habeas petition when the only claim asserted is one of actual innocence. I do not believe that AEDPA’s procedural bars should be read to preclude this court from granting permission to file a second or successive habeas petition to individuals who bring a viable freestanding actual innocence claim. As we have recognized, “if .a petitioner in fact has a freestanding actual innocence claim, he would be entitled to have all his procedural defaults excused as a matter of course under the fundamental miscarriage of justice exception.” Mize v. Hall, 532 F.3d 1184, 1195 n. 9 (11th Cir.2008).
In considering § 2244(b)(2)(B)(ii), the majority opinion concludes that a freestanding actual innocence claim is not the type of claim that may be brought on a second or successive petition. Section 2244(b)(2)(B)(ii) requires “clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.” The majority opinion decides that this requires that a court of appeals only grant permission to file such a petition when a petitioner can establish both actual innocence and a separate constitutional violation other than the actual innocence. In other words, the “constitutional error” in § 2244(b)(2)(B)(ii) cannot be the actual innocence of the applicant.
However, it is incongruous to suggest that an actually innocent individual who can allege a constitutional violation occurred at trial is entitled to permission to file a second or successive petition, while an actually innocent individual who cannot identify any such .violation cannot receive permission from this court to file such a petition to prove his claim, even though granting permission may prevent his unconstitutional execution. Indeed, the underlying principle of a Herrera actual in *831 nocence claim is that actual innocence renders an execution “constitutionally intolerable even if [the defendant’s] conviction was the product of a fair trial.” Schlup v. Delo, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quotation omitted). It is the actual innocence of the defendant, not the presence of constitutional errors at trial, that render an execution of an actually innocent individual a violation of the Eighth and Fourteenth Amendments. Accordingly, it should be the actual innocence of the applicant that entitles him to file a second or successive habeas petition.
For the same reason, the failure to satisfy the diligence requirement of 28 U.S.C. § 2244(b)(2)(B)(i) should not be interpreted to bar a viable freestanding actual innocence claim. The concept of punishing an innocent defendant with the penalty of death simply because he did not file his papers as early as he should have is draconian. Moreover, as the majority opinion admits, at least one affidavit, the 2008 Gordon affidavit,[3] does satisfy § 2244(b)(2)(B)(i). However, the majority’s analysis of Davis’s claim under § 2244(b)(2)(B)(ii) with that affidavit serving as the factual predicate for Davis’s claim is flawed.
The majority opinion looks at the Gordon affidavit alone and compares it with the State’s evidence at trial, and finds that the affidavit cannot establish that “no reasonable factfinder would have found [Davis] guilty of the underlying offense,” as required by § 2244(b)(2)(B)(ii). However, this analysis confuses the “factual predicate” of § 2244(b)(2)(B)(i) with the “facts underlying the claim” in § 2244(b) (2)(B)(ii) by analyzing only the Gordon affidavit, and not the totality of Davis’s evidence. While the “factual predicate” for the claim may be Gordon’s 2008 affidavit, there is nothing in AEDPA that suggests that this court consider only the “factual predicate” when determining if § 2244(b)(2)(B)(ii) has been satisfied. Instead, the requirement under § 2244(b)(2)(B)(ii) that this court consider the “facts underlying the claim” suggests that we consider all of the relevant facts of Davis’s actual innocence claim, which here would include all of the evidence Davis now presents. When considered together, this evidence significantly undermines the evidence presented by the State at trial.
There is no question that, even preAEDPA, the procedural obstacles to filing a second or successive habeas petition were considerable. See generally Schlup, 513 U.S. at 317-19, 115 S.Ct. 851. Nonetheless, the Supreme Court has “consistently reaffirmed the existence and importance of the exception for fundamental miscarriages of justice.” Id. at 321, 115 S.Ct. 851. And, particularly relevant in the present case, the Court has recognized that “[t]he quintessential miscarriage of justice is the execution of a person who is entirely innocent.” Id. at 324-25, 115 S.Ct. 851. Thus, where a defendant who can make a viable claim of actual innocence is facing execution, the fundamental miscarriage of justice exception should apply and AEDPA’s procedural bars should not prohibit the filing of a second or successive habeas petition. I respectfully dissent.

. Moreover, one of die two supposed confessions offered at trial was entirely inconsistent with the events of the night in question as reported by all other relevant witnesses, suggesting that little if any credibility should be afforded to that "confession.”

. Unlike the record in Herrera, the evidence presented by Davis in support of his actual innocence claim is significant and compelling.

. Benjamin Gordon's 2008 affidavit implicates Coles as the shooter both through incidents Gordon witnessed on the night of the shooting as well as Gordon's relation of an incident in which Coles essentially confessed to Gordon that he was the one who shot the officer.