203 U.S. 174
 27 S.Ct. 135
 51 L.Ed. 142
 FRED C. FISHER and Charles C. Cohn, on Behalf of Felix Barcelon, Plffs. in Err.,
v.
COLONEL DAVID J. BAKER, JR., and Captain John Doe Thompson.
 No. 214.
 Argued October 9, 10, 1906.
 Decided December 3, 1906.
 
 Messrs. Frederic R. Coudert and Howard Thayer Kingsbury for plaintiffs in error.
 [Argument of Counsel from pages 174-176 intentionally omitted]
 Solicitor General Hoyt for defendants in error.
 [Argument of Counsel from pages 176-178 intentionally omitted]
 Mr. Chief Justice Fuller delivered the opinion of the court:
 
 
 1
 Application for the writ of habeas corpus was made to the supreme court of the Philippine Islands, August 2, 1905, on behalf of one Barcelon, seeking to be discharged from alleged illegal detention in the province of Batangas. An order to show cause was granted, returnable August 4, to which return was made, the cause heard, and the application denied on the ground that the writ of habeas corpus had been suspended, and that the action of the Philippine authorities in that regard was not open to judicial review.
 
 
 2
 Petition for the allowance of a writ of error from this court, dated October 19, and service of copy thereof acknowledged by respondents the same day, was filed January 3, 1906, and the writ of error thereupon allowed and issued on that day.
 
 
 3
 The second clause of § 9 of article 1 of the Constitution of the United States provides: 'The privilege of the writ of habeas corpus shall not be suspended, unless when, in cases of rebellion or invasion, the public safety may require it.'
 
 
 4
 The 7th paragraph of § 5 of the act of Congress of July 1, 1902 (32 Stat. at L. chap. 1369, pp. 691, 692), reads: 'That the privilege of the writ of habeas corpus shall not be suspended, unless when, in cases of rebellion, insurrection, or invasion, the public safety may require it; in either of which events the same may be suspended by the President, or by the governor, with the approval of the Philippine Commission, where-ever, during such period, the necessity for such suspension shall exist.'
 
 
 5
 The record discloses that on January 31, 1905, the Philippine Commission adopted the following resolution:
 
 
 6
 'Whereas certain organized bands of ladrones exist in the proviness of Cavite and Batangas, who are levying forced contributions upon the people, who frequently require them, under compulsion, to join their bands, and who kill or maim in the most barbarous manner those who fail to respond to their unlawful demands, and are therefore terrifying the law-abiding and inoffensive people of those provinces; and
 
 
 7
 'Whereas these bands have, in several instances, attacked police and constabulary detachments, and are in open insurrection against the constituted authorities; and
 
 
 8
 'Whereas it is believed that these bands have numerous agents and confederates living within the municipalities of the said provinces; and
 
 
 9
 'Whereas, because of the foregoing conditions, there exists a state of insecurity and terrorism among the people which makes it impossible in the ordinary way to conduct preliminary investigations before justices of the peace and other judicial officers:
 
 
 10
 'Now, therefore, be it resolved, 'That, the public safety requiring it, the civil governor is hereby authorized and requested to suspend the writ of habeas corpus in the provinces of Cavite and Batangas.'
 
 
 11
 Whereupon, on the same day, the civil governor issued the following proclamation:
 
 
 12
 'Whereas certain organized bands of ladrones exist in the provinces of Cavite and Batangas, who are levying forced contributions upon the people, who frequently require them, under compulsion, to join their bands, and who kill or maim in the most barbarous manner those who fail to respond to their unlawful demands, and are therefore terrifying the law-abiding and inoffensive people of those provinces; and
 
 
 13
 'Whereas these bands have, in several instances, attacked police and constabulary detachments, and are in open insurrection against the constituted authorities, and it is believed that the said bands have numerous agents and confederates living within the municipalities of the said provinces; and
 
 
 14
 'Whereas, because of the foregoing conditions, there exists a state of insecurity and terrorism among the people which makes it impossible in the ordinary way to conduct preliminary investigations before justices of the peace and other judicial officers:
 
 
 15
 'In the interest of the public safety, it is hereby ordered that the writ of habeas corpus is from this date suspended in the provinces of Cavite and Batangas.'
 
 
 16
 But we must take notice of the fact that on October 19, 1905, the civil governor issued a proclamation revoking that of January 31, 1905, as follows:
 
 
 17
 'Whereas the ladrone bands which, up to a recent date, infested the provinces of Cavite and Batangas, have been practically destroyed, and the members thereof killed or captured or have surrendered, so that the necessity for the continuance of the suspension of the writ of habeas corpus in the aforesaid provinces, which was made necessary by the conditions therein prevailing on the 31st day of January last, no longer exists:
 
 
 18
 'Now, therefore, I, Luke E. Wright, governor general of the Philippine Islands, being duly authorized and empowered thereto by the Philippine Commission, do hereby proclaim the revocation of the suspension of the writ of habeas corpus in the provinces of Cavite and Batangas which was made by me on the 31st day of January last.'
 
 
 19
 This proclamation wiped out the basis of the decision sought to be reviewed on the day when the copy of the petition for writ of error was served on opposing counsel, and more than two months before the writ of error was issued. The question ruled by the court below, and solely argued before us, became, in effect, a moot question, not calling for determination here. Mills v. Green, 159 U. S. 651, 40 L. ed. 293, 16 Sup. Ct. Rep. 132.
 
 
 20
 But the disposition of this writ of error must be rested on another ground.
 
 
 21
 The proceeding is in habeas corpus, and is a civil, and not a criminal, proceeding. Cross v. Burke, 146 U. S. 82, 88, 36 L. ed. 896, 898, 13 Sup. Ct. Rep. 22. Section 10 of the Philippine act of July 1, 1902, (32 Stat. at L. chap. 1369, pp. 691, 695, U. S. Comp. Stat. Supp. 1905, p. 154), provides:
 
 
 22
 'That the Supreme Court of the United States shall have jurisdiction to review, revise, reverse, modify, or affirm the final judgments and decrees of the supreme court of the Philippine Islands in all actions, cases, causes, and proceedings now pending therein or hereafter determined thereby in which the Constitution or any statute, treaty, title, right, or privilege of the United States is involved, or in causes in which the value in controversy exceeds twenty-five thousand dollars, or in which the title or possession of real estate exceeding in value the sum of twenty-five thousand dollars, to be ascertained by the oath of either party or of other competent witnesses, is involved or brought in question; and such final judgments or decrees may and can be reviewed, revised, reversed, modified, or affirmed by said Supreme Court of the United States on appeal or writ of error by the party aggrieved, in the same manner, under the same regulations, and by the same procedure, as far as applicable, as the final judgments and decrees of the circuit courts of the United States.'
 
 
 23
 Final orders of the circuit or district courts of the United States in habeas corpus can only be reviewed by appeal, and not by writ of error. Re Morrissey (Morrissey v. Perry) 137 U. S. 157, 158, 34 L. ed. 644, 645, 11 Sup. Ct. Rep. 57; Rice v. Ames, 180 U. S. 371, 373, 45 L. ed. 577, 581, 21 Sup. Ct. Rep. 406, 407. In the latter case the court said:
 
 
 24
 'Motion is made to dismiss the appeal upon the ground that there is no provision of law allowing an appeal in this class of cases. Prior to the court of appeals act of 1891, provision was made for an appeal to the circuit court in habeas corpus cases 'from the final decision of any court, justice, or judge inferior to the circuit court' (Rev. Stat. § 763, U. S. Comp. Stat. 1901, p. 594); and from the final decision of such circuit court an appeal might be taken to this court (Rev. Stat. § 764, as amended March 3, 1885, chap. 353, 23 Stat. at L. 437, U. S. Comp. Stat. 1901, p. 595).
 
 
 25
 'The law remained in this condition until the court of appeals act of March, 1891 [26 Stat. at L. 828, chap. 517, U. S. Comp. Stat. 1901, p. 549], was passed, the 5th section of which permits an appeal directly from the district court to this court 'in any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question.' In this connection the appellee insists that an appeal will not lie, but that a writ of error is the proper remedy. In support of this we are cited to the case of Bucklin v. United States, 159 U. S. 680, 40 L. ed. 304, 16 Sup. Ct. Rep. 182, in which the appellant was convicted of the crime of perjury, and sought a review of the judgment against him by an appeal, which we held must be dismissed, upon the ground that criminal cases were reviewable here only by writ of error. Obviously that case has no application to this, since, under the prior sections of the Revised Statutes, above cited, which are taken from the act of 1842, an appeal was allowed in habeas corpus cases. The observation made in the Bucklin Case that 'there was no purpose by that act to abolish the general distinction, at common law, between an appeal and a writ of error, may be supplemented by saying that it was no purpose of the act of 1891 to change the forms of remedies theretofore pursued. Re Lennon, 150 U. S. 393, 37 L. ed. 1120, 14 Sup. Ct. Rep. 123; Nishimura Ekiu v. United States, 142 U. S. 651, 35 L. ed. 1146, 12 Sup. Ct. Rep. 336; Gonzales v. Cunningham, 164 U. S. 612, 41 L. ed. 572, 17 Sup. Ct. Rep. 182.'
 
 
 26
 Writ of error dismissed.