

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 16, 1994

Honorable John Vance
Dallas County District Attorney
Frank Crowley Courts Building, LB 19
Dallas, Texas 75207-4313

Opinion No. DM-295

Re: Whether the district clerk filing fees provided for in section 51.317 of the Government Code apply to the filing of an application for a preindictment writ of habeas corpus, and a related question (RQ-618)

Dear Mr. Vance:

Your letter requesting an opinion asks, "[C]an the appropriate civil filing fee be collected at the time of filing a pre-indictment Writ of Habeas Corpus?" According to your letter, there is confusion among the counties on this question:

> In some smaller counties, the pre-indictment writs of habeas corpus filed by attorneys seeking release of their clients from jail while awaiting grand jury proceedings or indictment have been treated as civil matters, and the district clerks have been collecting civil filing fees.

These clerks would claim that their authority for charging a filing fee is found in section 51.317 of the Government Code, which provides as follows:

> (a) The district clerk shall collect at the time the suit or action is filed the fees provided by Subsection (b) of this section for services performed by the clerk.
>
> (b) The fees are:
>
> (1) for filing a suit, including an appeal from an inferior court........................................................ $45
>
> (2) for filing a cross-action, intervention, contempt action, or motion for new trial......................................... $15
>
> (3) for issuing a subpoena, including one copy, when requested at the time a suit or action is filed........... $4
>
> (4) for issuing a citation or other writ or process not otherwise provided for, including one copy, when requested at the time a suit or action is filed........... $8

>    (5) for issuing an additional copy of a process not other-
>    wise provided for, when requested at the time a suit
>    or action is filed ..................................................... $4
>
>    (6) for the records management and preservation fund.. $5.

You contend that a filing fee may not be charged under section 51.317 for a pre-indictment habeas corpus proceeding because such a proceeding arises out of an arrest of a person suspected of committing a crime and therefore is a criminal proceeding. Your argument seems to be premised on the assumption that the statute applies only to civil proceedings. Although section 51.317 does not contain the word *civil* and merely speaks of a "suit" or a "suit or action," one of its statutory predecessors, article 3927, V.T.C.S. (1966), *repealed by* Acts 1985, 69th Leg., ch. 480, § 26(1) at 2048, did provide, until it was amended in 1969, that the fees were chargeable in "civil cases." *Compare* Acts 1957, 55th Leg., ch. 433, § 1, at 1293 (last amended version of article 3927 that referred to "civil cases") *with* Acts 1969, 61st Leg., ch. 667, § 1, at 1970 (amendment to article 3927 that first omitted "civil cases"). We have found no evidence that the omission of this phrase from the 1969 amendment[1] and subsequent amendments[2] and the nonsubstantive codification of article 3927 as Government Code section 51.317[3] were intended to change the scope of the provision. We therefore agree with you that section 51.317 applies only to a case, that is, a "suit or action," of a civil nature.

We have found no authority, however, for your contention that a habeas corpus challenge of a detention under criminal process is a criminal proceeding.[4] We therefore cannot agree with you that a preindictment writ of habeas corpus for that reason is not subject to the filing-fee statute. On the other hand, the fact that a habeas corpus proceeding is not a criminal proceeding does not require the conclusion by default that a

---

[1]*See* Sen. Comm. on Judiciary, Bill Analysis, S.B. 255, 61st Leg. (1969) (no indication that omission was intended to change scope of application).

[2]*See* Acts 1979, 66th Leg., ch. 295, § 1, at 667 (amending article 3927; no mention of "civil cases"); Acts 1977, 65th Leg., ch. 219, § 1, at 608 (same).

[3]*See* Acts 1985, 69th Leg., ch. 480, § 1, at 1983 (recodifying article 3927 as sections 51.317 and 51.318 of Government Code), § 27, at 2049 (no substantive change intended).

[4]*State v. Kanapa*, 778 S.W.2d 592 (Tex. App.–Houston [1st Dist.] 1989, no writ), does not support a characterization of post-conviction habeas corpus as criminal in nature, although the court there expressly held that the general rule that a habeas respondent cannot appeal from an adverse ruling is "no longer applicable in *criminal cases* when the State would otherwise have the right to appeal." *Id.* at 593 (emphasis added). The court in *Kanapa* explained its holding as follows: "We find that by granting appellee's requested relief, the trial court modified the previous judgment entered against appellee. Therefore the State is entitled to appeal the trial court's order." *Id.* This passage clarifies that the court was referring in the above quotation not to habeas corpus proceedings themselves as "criminal cases" but rather to the prior criminal prosecutions that are affected by the habeas judgment in some way that is appealable by the State under Texas Constitution article V, section 26, and Code of Criminal Procedure article 44.01.

such a proceeding is a civil "suit or action" within the scope of section 51.317. We must consider further the legislative intent of section 51.317 to determine whether that provision applies to habeas corpus. *See Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974) ("The fundamental and dominant rule controlling the construction of a statute is to ascertain if possible the intention of the Legislature expressed therein").

The language of section 51.317, even with the interpolation of the prior statutory reference to "civil cases," is an indeterminate expression of legislative intention regarding your question. The words *action*,[5] *case*,[6] *civil*,[7] and *suit*[8] are subject to varying

---

[5]*Black's Law Dictionary* defines *action* in part as follows:

> Term in its usual legal sense means a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law. . . . The legal and formal demand of one's right from another person or party made and insisted on in a court of justice. An ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. . . .
>
> . . . .
>
> *Civil* actions are such as lie in behalf of persons to enforce their rights or obtain redress of wrongs in their relation to individuals. . . .
>
> *Criminal* actions are such as are instituted by the sovereign power (*i.e.* government), for the purpose of punishing or preventing offenses against the public.

BLACK'S LAW DICTIONARY 28 (6th ed. 1990) (italics in original).

[6]*Black's Law Dictionary* defines *case* in part as follows:

> A general term for an action, cause, suit, or controversy, at law or in equity; a question contested before a court of justice; an aggregate of facts which furnishes occasion for the exercise of the jurisdiction of a court of justice. A judicial proceeding for the determination of a controversy between parties wherein rights are enforced or protected, or wrongs are prevented or redressed; any proceeding judicial in its nature.
>
> Criminal act requiring investigation by police. . . .
>
> The word "case" may include applications for divorce, applications for the establishment of highways, applications for orders of support of relatives, and other special proceedings unknown to the common law.

*Id.* at 215.

[7]*Black's Law Dictionary* defines *civil* in part as follows:

> Of or relating to the state or its citizenry. Relating to private rights and remedies sought by civil actions as contrasted with criminal proceedings.

*Id.* at 244.

interpretations. Fortunately, however, it is unnecessary for us to rely on textual interpretation, for our research of the evolution of the fee statutes for habeas corpus and "civil cases" has uncovered clear evidence that section 51.317 does not apply to preindictment habeas proceedings.

An 1897 predecessor to section 51.317 was part of a statute that also contained a fee provision expressly applicable to habeas corpus. *See* Acts 1897, 25th Leg., 1st C.S., ch. 5, at 5. The statute provided in part as follows:

> Section 1. ... [I]n all the counties in this State, where there shall have been cast at the next preceding presidential election 3000 votes or over, the clerks of the district courts, district attorneys, county attorneys, sheriffs and constables shall receive from the State the following fees and compensation in felony cases, and no more:

> Sec. 2. The clerks of the district court shall receive for each felony case tried in such court by jury, whether the defendant be convicted or acquitted, the sum of $8. For each transcript on appeal or change of venue, 8 cents for each 100 words. For each felony case finally disposed of without trial, or dismissed or nolle prosequi entered, $8. ... *For entering judgment in habeas corpus cases, 80 cents; and for taking down testimony and preparing transcript in habeas corpus cases, 8 cents for each 100 words; but the fees in habeas corpus cases shall, in no event, exceed $8 in any one case.*

> Sec. 3. The district or county attorneys shall receive the following fees:

> . . . .

> 3. *For representing the State in each case of habeas corpus where the defendant is charged with felony, the sum of $16.*

> . . . .

---

[8]*Black's Law Dictionary* defines *suit* in part as follows:

> A generic term, of comprehensive signification, referring to any proceeding by one person or persons against another or others in a court of law in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or in equity... It is, however, seldom applied to a criminal prosecution. And it was formerly sometimes restricted to the designation of a proceeding in equity, to distinguish such proceeding from an action at law.

*Id.* at 1434.

Sec. 7. That in those counties where there shall have been cast at the next preceding presidential election less than 3000 votes the clerk of the district courts, district attorneys, county attorneys, sheriffs and constables shall receive from the State the fees and compensation in felony cases allowed under now existing laws, and are not intended to be affected by the provisions of sections 1, 2, 3, 4, 5 and 6 of this act.

. . . .

Sec. 22. The clerks of the district court shall receive for the following services the following fees:

For copy of petition, including certificate and seal, each 100 words, 15 cents; provided, whenever in any *suit* a certified copy of any petition or any other instrument is necessary in the district or county court, it shall be lawful for the *plaintiff or defendant* to prepare such true and correct copy thereof, and to submit the same to the clerk of the district or county court, as the case may be, whose duty it shall be to compare the same with the original instrument, and if found to be correct he shall attach his certificate of true copy; for such service he shall receive 50 cents for each certificate and seal, and in addition thereto the sum of 10 cents per page, 700 words to the page, for each page of said copy. Each writ of citation, 75 cents; each copy of writ of citation, 25 cents; filing of each paper, 10 cents; entering appearance of each party to *suit*, to be charged but once, 5 cents; *each final judgment or decree, 75 cents; every other order, judgment or decree, not exceeding 200 words, 25 cents; where the order, judgment or decree, whether final or not, exceeds 200 words, the additional fee for each 100 words in excess of 200 words shall be 10 cents; making out and transmitting the records and proceedings in a cause to an inferior court, for each 100 words, 15 cents; making transcript of the records and papers in any cause upon appeal or writ of error, with certificate and seal, each 100 words, 10 cents* . . . .

*Id.* §§ 1 - 2, 22 (emphasis added), § 2 *repealed by* Acts 1985, 69th Leg., ch. 269, § 5(2) at 1307, § 22 *repealed by* Acts 1901, 27th Leg., ch. 21, § 4, at 25. Section 2 of the 1897 statute thus regulated fees in felony prosecutions and habeas proceedings, and section 22 of the same statute generally regulated fees in "suit[s]" between "plaintiff[s]" and "defendant[s]."

Comparison of the above-quoted sections 2 and 22 makes it obvious that the legislature did not intend for the language of the latter section to apply to habeas corpus proceedings, at least where the applicant is being detained under felony or misdemeanor

charges.[9]   Section 2 expressly provided for fees for entry of judgment (80 cents) and preparation of testimony and transcript (eight cents per 100 words) in habeas proceedings, so the similar language in section 22 (75 cents for the first 200 words of the judgment and 10 cents per 100 words of transcript on appeal or writ of error) could not also apply.  The placement of the specific language regulating habeas corpus fees in the same statute with a separate general section regulating civil fees that does not mention habeas corpus indicates a deliberate omission to include habeas corpus within the application of the general section.

The subsequent evolution of the provisions in sections 2 and 22 is devoid of any evidence of a broadening of the general civil fee schedule to include habeas corpus.  In 1901 the general fee provisions in section 22 were repealed, Acts 1901, 27th Leg., ch. 21, § 4, at 25, and were replaced by a district clerk fee schedule that was expressly applicable to "civil cases," id. § 1.  There is no suggestion in the 1901 statute that the scope of the general fee provisions had been broadened to include habeas corpus proceedings.  The 1901 fee schedule eventually was codified as article 3927 of the Revised Civil Statutes of 1925, see V.T.C.S. art. 3927 (1966), and then was repealed and recodified as Government Code section 51.317, see Acts 1985, 69th Leg., ch. 480, sec. 1, § 51.317, at 1983, sec. 26(1) at 2048.  Neither the codification of the fee schedule as article 3927 nor the subsequent amendments to the article[10] even intimate that the scope of the fee schedule had been broadened to include habeas corpus proceedings.

Meanwhile, the habeas corpus fee language of section 2 eventually was codified in article 1026 of the Code of Criminal Procedure of 1925, see Code Crim. Proc. art. 1026 (1979), where it remained, see Acts 1965, 59th Leg., ch. 722, § 1, art. 54.02, at 563 (saving article 1026 from repeal when 1965 Code of Criminal Procedure was enacted), until it was repealed in 1985, see Acts 1985, 69th Leg., ch. 269, § 5(2) at 1307.  Article 1026 retained language similar to that in section 2 of the 1897 statute, establishing fees for entering judgment and preparing transcript "in habeas corpus cases."  These fees, unlike

---

[9]The language of section 2 of the 1897 statute might be construed as limiting district clerk habeas fees to detentions under felony charges because section 1 of the statute referred to fees "in felony cases" and section 3 limited district and county attorneys' fees in habeas proceedings only to those "where the defendant is charged with felony."  Case law disapproves such a construction, however.  Section 2 of the 1897 statute eventually was codified in article 1026 of the Code of Criminal Procedure (1979), which continued to provide for fees for entering judgment and preparing transcript in habeas corpus proceedings until it was repealed in 1985.  See Acts 1985, 69th Leg., ch. 269, § 5(2) at 1307 (repealer of article 1026).  The Texas Commission of Appeals held in 1935 that the district clerk was entitled to these fees under article 1026 regardless of whether the applicant had been charged with a felony or merely a misdemeanor.  McCormick v. Sheppard, 86 S.W.2d 213, 215 (Tex. 1935).  The 1897 statute, then, authorized district clerk fees under section 2 for habeas corpus proceedings arising from detentions under felony or misdemeanor charges, but did not authorize any fees for habeas proceedings under section 22.

[10]See Acts 1941, 47th Leg., ch. 387, § 1, at 641; Acts 1945, 49th Leg., ch. 368, § 3, at 662; Acts 1957, 55th Leg., ch. 433, § 1, at 1293; Acts 1969, 61st Leg., ch. 667, § 1, at 1970; Acts 1977, 65th Leg., ch. 219, § 1, at 608; Acts 1979, 66th Leg., ch. 295, § 1, at 667.

those provided in the general district clerk fee schedule, were initially paid not by the applicant/defendant but rather by the State; and the applicant/defendant was charged with the fees only upon conviction. *See* Code Crim. Proc. art. 1018 (1979); *see also* Code Crim. Proc. tit. 2 revisor's note at 262-63 (Supp. 1994) (explaining that article 1018 was impliedly repealed by V.T.C.S. article 3912e).

Thus, until 1985 the provisions for fees in habeas corpus cases remained segregated from the general civil fee schedule. In that year the general fee schedule in V.T.C.S. article 3927 was recodified as sections 51.317 and 51.318 of the Government Code, *see* Acts 1985, 69th Leg., ch. 480, § 1, at 1983, with the express provision that no substantive change was intended, *id.* § 27, at 2049. The substance of article 1026 of the Code of Criminal Procedure (repealed 1985) was omitted from the nonsubstantive 1985 codification of title 2 of the Code of Criminal Procedure because V.T.C.S. article 3912e prohibits payment of fees by the State or a county to any salaried district or county officer. *See* Code Crim. Proc. tit. 2 foreword at 228 & revisor's note at 265 (Supp. 1994). Article XVI, section 61, of the constitution requires district clerks, as "district officers," to be compensated on a salary basis.

In sum, section 51.317 derives from an 1897 general fee section that did not apply to the habeas corpus proceeding because the 1897 statute also contained a separate section that specifically regulated habeas proceedings. There is no evidence in any intermediate predecessor statute of an intention to broaden the general civil fee schedule to include habeas corpus. Rather, the habeas fee provisions were kept segregated in article 1026 of the Code of Criminal Procedure until that article was repealed in 1985, the same year in which section 51.317 was enacted as a nonsubstantive revision of the district clerk fee schedule. We therefore conclude that section 51.317 does not apply to a preindictment habeas proceeding.

You also ask whether, if section 51.317 is inapplicable to a preindictment habeas proceeding, a district clerk might charge a fee for services rendered in the proceeding pursuant to section 51.319 of the Government Code. Section 51.319 provides, in pertinent part:

> The district clerk shall collect the following fees for services performed by the clerk:
>
> . . .
>
> (5) for performing any other service prescribed or authorized by law for which no fee is set by law, a reasonable fee.

Because no other law sets a fee for the district clerk's services in a habeas corpus proceeding, this provision authorizes the district clerk to charge a "reasonable" filing fee in

such a proceeding.[11]  *Cf.* Attorney General Opinion H-453 (1974) (statutory predecessor of section 51.319 authorizes reasonable district clerk fees in condemnation proceedings).

Although what constitutes a "reasonable fee" is a fact question and therefore is beyond the scope of an attorney general opinion, we believe that a habeas corpus fee that exceeds the fee charged in civil cases in district court would be unreasonable as a matter of law. *Cf.* Attorney General Opinion DM-26 (1991) at 3 (in district-court condemnation proceedings maximum fee that will be deemed reasonable is same as fee statutorily provided for county clerks in condemnation proceedings). Thus, a "reasonable fee" for filing the application for habeas corpus may be less than but may not exceed $45, *see* Gov't Code § 51.317(b)(1); and a "reasonable fee" for issuance of the writ may be less than but may not exceed $8, *id.* § 51.317(b)(4). The fees for filing the application and issuing the writ are chargeable when the application is filed and issuance of the writ is requested. *Id.* § 51.317(a).

The fact that such fees are due upon filing and request for issuance does not mean, however, that the clerk may refuse to issue the writ or any other process in a preindictment habeas corpus proceeding for the reason that the fees have not been paid. Although Texas Rule of Civil Procedure 142 requires payment of fees or the filing of a pauper's affidavit before the clerk may issue process, that rule applies only to a "suit," *see* Tex. R. Civ. P. 125, 127, 131, 137-38, or a "civil" matter, *see* Tex. R. Civ. P. 126, 128. For the following reasons we believe that the writ of habeas corpus is not a kind of "suit" or "civil" matter that the Texas Supreme Court intended to include under rule 142.

*Black's Law Dictionary* defines *habeas corpus* in part as follows:

> Lat. (You have the body.) The name given to a variety of writs (of which these were anciently the emphatic words), having for their object to bring a party before a court or judge. In common usage, and whenever these words are used alone, they are usually understood to mean the *habeas corpus ad subjiciendum* (see *infra*). . . . The primary function of the writ is to release from unlawful imprisonment. . . . The office of the writ is not to determine prisoner's guilt or innocence, and only issue which it presents is whether prisoner is restrained of his liberty by due process. . . .
>
> A form of collateral attack. An independent proceeding instituted to determine whether a defendant is being unlawfully

---

[11]Note that the federal court in *In re Moy Chee Kee*, 33 F. 377 (C.C.N.D. Cal. 1887), although holding that no statutory civil case fees applied to habeas corpus proceedings because such proceedings are *sui generis, id.* at 379, also held that the presiding court might fix a reasonable amount as costs for the clerk's services in a habeas proceeding and suggested that the court refer to fees for similar services in the fee-bill statute for guidance in the determination of a reasonable amount, *id.* at 380.

>    deprived of his or her liberty. It is not an appropriate proceeding for appeal-like review of discretionary decisions of a lower court.

>    . . . .

>    **Habeas corpus ad subjiciendum** . . . . A writ directed to the person detaining another, and commanding him to produce the body of the prisoner, or person detained. This is the most common form of habeas corpus writ, the purpose of which is to test the legality of the detention or imprisonment; not whether he is guilty or innocent. This writ is guaranteed by U.S. Const. Art. I § 9, and by state constitutions. . . .

>    This is the well-known remedy in England and the United States for deliverance from illegal confinement, called by Sir William Blackstone the most celebrated writ in the English law, and the great and efficacious writ in all manner of illegal confinement. . . . The "great writ of liberty," issuing at common law out of courts of Chancery, King's Bench, Common Pleas, and Exchequer.

BLACK'S LAW DICTIONARY 709-10. *Habeas corpus ad subjiciendum* thus is a "proceeding" for a "writ," the purpose of which is a narrow one: to test the legality of a detention or imprisonment. It is intended to be "efficacious."[12]

Article 11.01 of the Code of Criminal Procedure defines *habeas corpus* similarly, as follows:

>    The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.

Article 11.01 and the foregoing *Black's* definitions thus speak of habeas corpus in terms of "writ," "remedy," and "order" but do not call it a "suit" or an "action." In fact, there is no consensus on whether habeas corpus is a "suit" or an "action":

>    Strictly speaking habeas corpus is not an action or a suit, but is a summary remedy open to the person detained. However, in some cases, or for some purposes, it is held to be an action or suit. Thus,

---

[12]Article 11.04 of the Code of Criminal Procedure provides: "Every provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it."

the proceedings in habeas corpus have been considered in the nature
of an action so as to entitle persons to costs under a statute providing
for costs in an action, although it is otherwise under other statutes.
In some jurisdictions it is classed as a special proceeding; in others it
is not considered as a special proceeding.

39 C.J.S. *Habeas Corpus* § 3, at 462 (1976) (footnotes omitted).

The sister high courts of this state have issued decisions illustrating the lack of consensus on whether habeas corpus is a "suit." An example of a case concluding that habeas corpus is not a "suit" is *Ex parte Ramzy*, 424 S.W.2d 220 (Tex. 1968). There the Texas Supreme Court stated that a habeas proceeding for relief from imprisonment for contempt is not "a suit or controversy between private parties" and held that the party adverse to the habeas applicant in an underlying civil proceeding out of which the alleged contempt arose was not entitled to notice of the hearing on the merits of the habeas application. *Id.* at 223. The court explained its holding as follows:

> The writ of habeas corpus is designed for the purpose of giving a
> speedy remedy to one who is unlawfully detained. The very nature
> of a procedure by writ of habeas corpus dictates that it would be
> inconsistent to recognize on the one hand that the purpose of the writ
> is to obtain a speedy adjudication of a person's right to be free from
> illegal restraint, and on the other hand to compel the person to await
> service of notice of the proceedings upon some private party before
> the judge can proceed with the investigation.

*Id.*[13] The Texas Court of Criminal Appeals took the contrary position on the "suit"-or-"not a suit" question in *Ex parte Browder*, 373 S.W.2d 256 (1963), and *Curry v. Ater*, 648 S.W.2d 10 (1983), *overruled on other grounds by Collier v. Poe*, 732 S.W.2d 332, 344 (Tex. Crim. App. 1987). In these cases the court, without stating its reasoning, held that a habeas corpus proceeding is a "suit" for purposes of V.T.C.S. article 2168a (repealed by Acts 1985, 69th Leg., ch. 959, § 9(1), at 3322), a statute requiring a court, "in all suits, either civil or criminal," to grant a continuance where a party or attorney is a member of legislature. *See Curry*, 648 S.W.2d at 12; *Browder*, 373 S.W.2d at 257. (We note that in both *Curry* and *Browder*, the person seeking a legislative continuance was one of the attorneys for the habeas applicant; therefore, the applicant waived any entitlement to speedy relief under the writ.)

---

[13]*See also Ex parte Tail*, 14 N.W.2d 840, 841 (Neb. 1944) (habeas corpus is special civil proceeding providing summary remedy to detained persons and is not technically adversary in character or "a suit between the applicant and the officer [detaining him]"); *Florida ex rel. Deeb v. Fabisinski*, 152 So. 207, 209 (Fla. 1933) (habeas corpus is not action or suit but summary remedy); *New York ex rel. Hauptmann v. Hanley*, 274 N.Y.S. 813, 815 (Sup. Ct. 1934) (habeas corpus is summary proceeding), *aff'd, New York ex rel. Hauptmann v. Hanley*, 274 N.Y.S. 824 (App. Div. 1934); *Redfield v. Davis*, 176 N.W. 512 (S.D. 1920) (habeas corpus is not civil action).

Not only is there no consensus on whether habeas corpus is a "suit" or "action," but also the courts have struggled with the correctness *vel non* of describing the proceeding as "civil." The courts sometimes have considered habeas corpus proceedings to be civil in nature, *see Ex parte Tong*, 108 U.S. 556, 560 (1883); *Ex parte Morris*, 349 S.W.2d 99, 100-01 (Tex. 1961); *Harbison v. McMurray*, 158 S.W.2d 284, 287 (Tex. 1942), and sometimes have considered them to be neither civil nor criminal but rather *sui generis*, *see In re Moy Chee Kee*, 33 F. 377, 379 (C.C.N.D. Cal. 1887), or an exercise of special constitutional and statutory jurisdiction, *see McFarland v. Johnson*, 27 Tex. 105, 109 (1863); *Garza v. Schilling*, 576 S.W.2d 147, 151 (Tex. Civ. App.--Corpus Christi 1978, no writ).

Still other cases indicate a recognition of the futility of mechanically labeling habeas corpus as a means of determining the appropriateness of applying a particular rule to the proceeding and instead focus concern on the effectiveness of the writ itself. Thus, in *Smith v. Bennett*, 365 U.S. 708 (1961), the Supreme Court held that a state requirement that all prisoners pay a filing fee in order to challenge a detention by habeas corpus, thereby making the writ unavailable to the state's indigent prisoners, denied those prisoners equal protection of the laws. *Id.* at 713-14. The Court found the civil label of habeas proceedings not to be controlling in this context[14] and declined to reach the state's argument that if habeas corpus, a civil remedy, must be made available to indigents, then

---

[14]A unanimous Court wrote as follows of the overarching importance of habeas corpus in a free common-law society:

> We shall not quibble as to whether in this context it [habeas corpus] be called a civil or criminal action for, as Selden has said, it is "the highest remedy in law, for any man that is imprisoned." 3 Howell's State Trials 95 (1628). The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels. Ever since the Magna Charta, man's greatest right--personal liberty--has been guaranteed, and the procedures of the Habeas Corpus Act of 1679 gave to every Englishman a prompt and effective remedy for testing the legality of his imprisonment. Considered by the Founders as the highest safeguard of liberty, it was written into the Constitution of the United States that its "privilege * * * shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Art. I § 9. Its principle is imbedded in the fundamental law of 47 of our States. It has long been available in the federal courts to indigent prisoners of both the State and Federal Governments to test the validity of their detention. Over the centuries it has been the common law world's "freedom writ" by whose orderly processes the production of a prisoner in court may be required and the legality of the grounds for his incarceration inquired into, failing which the prisoner is set free. We repeat what has been so truly said of the federal writ: "there is no higher duty than to maintain it unimpaired," Bowen v. Johnston, 1939, 306 U.S. 19, 25, 59 S. Ct. 442, 446, 83 L. Ed. 455, and unsuspended, save only in the cases specified in our Constitution. *When an equivalent right is granted by a State, financial hurdles must not be permitted to condition its exercise.*

*Smith*, 365 U.S. at 712-13 (emphasis added; footnote omitted).

the protection of all civil rights must be made available free of charge to the poor. *Id.* at 712-13.

Likewise, in *Harris v. Nelson*, 394 U.S. 286 (1969), the Court was critical of the "civil" label of habeas proceedings. There the Court held that the Federal Rules of Civil Procedure regulating discovery "do not apply [to habeas proceedings] completely and automatically by virtue of Rule 81(a)(2),"[15] *id.* at 298, and that the federal courts may fashion appropriate rules for discovery in such proceedings "by analogy to existing rules or otherwise in conformity with judicial usage," *id.* at 299. The majority called the "civil" label of a habeas corpus proceeding "gross and inexact," *id.* at 293-94,[16] and resisted an automatic literal application of the civil discovery rules to such a proceeding because the delay caused by some of the elaborate discovery procedures would "do violence to the efficient and effective administration of the Great Writ," *id.* at 297.

The Texas courts also at times have focused on the practical concern of whether a particular procedural rule will conflict with the effectiveness of the writ rather than whether the writ fits semantically within the language of the rule. For example, the Texas Supreme Court in *Arendt v. Carter*, 210 S.W.2d 976 (1948), explained the apparent conflict between *McFarland v. Johnson*, 27 Tex. 105 (holding that respondent may not appeal), and *Harbison v. McMurray*, 158 S.W.2d 284 (holding that applicant may appeal), as follows:

> The purpose of the writ of habeas corpus is to obtain a speedy adjudication of a person's right to liberation from illegal restraint, except in the child custody cases. In the light of this purpose there is no inconsistency in permitting an appeal by a relator where there is a refusal of discharge, and denying an appeal by the respondent where the discharge is granted. The former is consistent with the purpose of the writ of habeas corpus, while the latter is in conflict with such purpose.

_____

[15]Federal Rule of Civil Procedure 81(a)(2) provides in pertinent part: "These rules are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions."

[16]The majority wrote:

> It is, of course, true that habeas corpus proceedings are characterized as "civil." See, *e.g.*, Fisher v. Baker, 203 U.S. 174, 181, 27 S. Ct. 135, 51 L.Ed. 142 (1906). But the label is gross and inexact. [Footnote omitted.] Essentially, the proceeding is unique. Habeas corpus practice in the federal courts has conformed with civil practice only in a general sense.

*Harris*, 394 U.S. at 293-94. In the omitted footnote the Court cited authorities for "[t]he degree to which this ['civil'] characterization excessively simplifies a complex history." *Id.* at 294 n.4.

*Arendt*, 210 S.W.2d at 977 (emphasis added); *see State v. Patterson*, 668 S.W.2d 462, 463 (Tex. App.--Corpus Christi 1984, no writ) (per curiam) ("regardless of whether the [habeas corpus] proceeding is civil or criminal," State may not appeal from order releasing on writ of habeas corpus applicant who was committed as delinquent child).

After considering the foregoing authorities, we are of the opinion that a court, in determining whether Texas Rule of Civil Procedure 142 applies to a preindictment habeas corpus proceeding, would conclude that the controlling consideration is not whether preindictment habeas is a "suit" or whether the proceeding is better categorized as "civil" or "not civil" but rather whether application of the rule would thwart the speed and efficaciousness of the proceeding. The denial of relief from unlawful imprisonment on the basis of even momentary inability to pay a filing fee would conflict with the purpose of habeas corpus and the central importance of personal freedom in the United States and the State of Texas. The effectiveness of habeas corpus would be compromised if rule 142 were construed as applying to the writ. We therefore conclude that rule 142 does not apply to a preindictment habeas proceeding.[17]

## S U M M A R Y

The district clerk filing fees provided for in section 51.317 of the Government Code do not apply to the filing of an application for a preindictment writ of habeas corpus, but a district clerk may charge a "reasonable" filing fee for services rendered in a habeas corpus proceeding pursuant to section 51.319 of the Government Code. The clerk may not refuse to issue the writ for nonpayment of such a fee, however, because Texas Rule of Civil Procedure 142 does not apply to a preindictment habeas proceeding.

Very truly yours,

DAN MORALES
Attorney General of Texas

---

[17]Nor may a sheriff or constable refuse to serve the writ merely because the service fee has not been paid in advance. The sheriff, *see* Local Gov't Code § 85.021, or the constable, *see id.* § 86.021, *Merritt v. Harris County*, 775 S.W.2d 17, 23 (Tex. App.--Houston [14th Dist.] 1989, writ denied), generally must execute all process directed to him or her by legal authority. Texas Rule of Civil Procedure 126 provides that a sheriff or constable "shall [not] be compelled to execute any process in civil cases coming from any county other than the one in which he is an officer, unless the fees allowed him by law for the service of such process shall be paid in advance; except when affidavit is filed, as provided by law or these rules." This rule, however, expressly refers to "civil cases" without specifying habeas corpus proceedings. Because this rule would compromise the effectiveness of the writ if it were construed as applying to the writ, we believe that it does not apply to a habeas corpus proceeding.

JORGE VEGA
First Assistant Attorney General

DREW DURHAM
Deputy Attorney General for Criminal Justice

WILL PRYOR
Special Counsel

RENEA HICKS
State Solicitor

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James B. Pinson
Assistant Attorney General