**Norman L. JOHNSTON**

v.

**William J. LOVE, et al.**

**Civil Action No. 95–3727.**

United States District Court,
E.D. Pennsylvania.

March 7, 1996.

Norman L. Johnston, Huntingdon, PA, Pro Se.

Stuart Suss, District Attorney's Office, West Chester, PA, Walter S. Batty, U.S. Attorney's Office, Philadelphia, PA, for William J. Love, Attorney General of the State of Pennsylvania, District Attorney of Chester County.

*OPINION*

LOUIS H. POLLAK, District Judge.

On June 14, 1995, Norman L. Johnston, an inmate at the State Correctional Institution in Huntingdon, Pennsylvania, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. Following the usual practice of this court, that petition was referred to a magistrate judge—in this instance, Magistrate Judge Thomas J. Rueter. On August 21, 1995, Johnston filed a motion for leave of court to invoke discovery under Rule 6(a) of the Rules Governing Section 2254 Cases. On October 2, 1995, Judge Rueter denied this motion. Johnston appealed Judge Rueter's October 2 ruling on October 16, 1995. On October 18, 1995, Judge Rueter issued a

Report and Recommendation ("R & R") recommending that Johnston's habeas corpus petition be denied without an evidentiary hearing; Johnston subsequently filed objections to that R & R. This opinion will address Johnston's appeal of Judge Rueter's discovery ruling.

## I

Johnston was found guilty by a jury on March 18, 1980 of four counts of first degree murder and associated offenses, and sentenced to four consecutive life sentences followed by a further twelve and a half to twenty-five years of imprisonment. He then filed both an appeal to the Superior Court and a motion for a new trial on the basis of (asserted) newly-discovered evidence. The Superior Court remanded the case to Judge Sugerman, the original trial judge, for a hearing on the newly-discovered evidence. Judge Sugerman accordingly held an evidentiary hearing in May and June 1987, and issued a lengthy opinion denying the new trial motion. In 1990, the Superior Court upheld both Johnston's original conviction and Judge Sugerman's order denying Johnston's motion for a new trial.

## II

█ Johnston's discovery motion was made under Rule 6(a) of the Rules Governing Section 2254 Cases, which provides: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Although this rule states that the judge shall allow discovery "in the exercise of his discretion," the rule's history makes clear that its purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief. Indeed, the advisory committee's notes to Rule 6 state:

Discovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing or to grant the writ following an evidentiary hearing:

We are aware that confinement sometimes induces fantasy which has its basis in the paranoia of prison rather than in fact. But where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

Rule 6 of the Rules Governing Section 2254 Cases, advisory committee's notes (quoting *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 1091, 22 L.Ed.2d 281 (1969)). *Harris*, the case quoted in the advisory committee's notes, was decided before the adoption of the rules governing procedure in habeas corpus cases; the Court's observation in *Harris* that "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry" in cases in which "specific allegations ... show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally" was founded upon the courts' duty to exercise habeas corpus jurisdiction and their authority, under the All Writs Act, 28 U.S.C. § 1651, "to fashion appropriate modes of procedure" to carry out that duty. *See* 394 U.S. at 299, 89 S.Ct. at 1090. As the advisory committee's notes observe, however, Rule 6 was adopted partly on the basis of *Harris*'s suggestion that it would be valuable to establish general rules to govern habeas corpus cases, 394 U.S. at 300 n. 7, 89 S.Ct. at 1091 n. 7, and Rule 6(a) is intended to be "consistent" with *Harris*. *See* Rule 6, advisory committee's notes. Thus, reading Rule 6(a) in light of *Harris*, I conclude that a court may not deny a habeas corpus petitioner's motion for leave to conduct discovery if there is a sound basis for concluding that the requested discovery might allow him to demonstrate that he has been confined illegally. *Cf. Gaitan–Campanioni v. Thornburgh*, 777 F.Supp. 1355, 1356 (E.D.Tex.1991) ("Although discovery is per-

mitted only by the leave of the court, the court should not hesitate to allow discovery, where it will help illuminate the issues underlying the applicant's claim.").

## III

■ Bearing in mind *Harris*'s discussion of the circumstances in which a court should allow a habeas corpus petitioner to conduct discovery, I will now consider the basis of Johnston's discovery motion. A principal element of Johnston's habeas corpus petition is his claim that the Commonwealth failed to disclose a number of benefits it conferred upon an important witness against the petitioner, James Griffin. One of these benefits, Johnston claims, was an agreement by the Commonwealth to drop a charge of conspiracy to commit murder pending against Griffin. The charge was pending throughout Johnston's trial in January and February 1980. Griffin testified at that trial that he had no "deal" with the Commonwealth for his testimony. The charge was eventually dropped in February, 1981. Johnston's discovery motion relates to his theory that there existed an agreement to drop the conspiracy charge against Griffin in exchange for Griffin's testimony against Johnston.

Johnston notes that there was evidence that Griffin was in the federal witness protection program during the period in which he was a witness at Johnston's trial.[1] He also points out that there is at least some reason to believe that a condition of admission into the federal witness protection program is that the witness have no criminal charges pending against him. Johnston supports this claim by citing a First Circuit case, *Ouimette v. Moran*, 942 F.2d 1 (1st Cir.1991). In that case, a habeas corpus petitioner made claims somewhat similar to Johnston's, *e.g.*, that a government witness named Dussault was the beneficiary of undisclosed largesse from the prosecution. After citing a range of evidence of benefits that had been conferred upon the government's witness, the *Ouimette* court stated:

> Finally, Dussault was promised acceptance into the Federal Witness Program by the state prosecutor, who personally negotiated this for Dussault. Acceptance into this program is predicated on the absence of outstanding criminal charges, so there is a plausible inference that even more undisclosed deals were made.

*Id.* at 7. Although an incidental factual assertion in a judicial opinion would not ordinarily be admissible, Rule 6(a) does not necessarily require a petitioner to support his discovery request with admissible evidence. Rather, it requires him to show "good cause" for conducting discovery. The above passage in *Ouimette* suffices to meet that standard.

I note, however, that *Ouimette*'s statement may not be applicable to Johnston's claim for any of a number of reasons. It is possible, for instance, that the program discussed by *Ouimette* and the program in which Griffin was apparently a participant were different, or that the program's rules of admission changed over time, or that the *Ouimette* court was mistaken. Moreover, *Ouimette*'s statement would not be applicable to this case without at least one qualification. Because the charges against Griffin apparently were not dropped until well after his admission into the witness protection program, it must at least be possible to admit an individual into the program on the basis of assurances as to the future disposition of pending charges. Thus, it is by no means

---

1. The evidence is in conflict as to precisely when Griffin entered the witness protection program. Griffin's attorney, Michael J. Kean, Esq., testified at the evidentiary hearing before Judge Sugerman that Griffin entered the program "[p]erhaps around the end of January, 1980," "[p]robably immediately before" the beginning of Johnston's trial. Transcript, 5/26/1987, at 93. By contrast, Douglas B. Richardson, who was an Assistant United States Attorney in the Eastern District of Pennsylvania, testified that Griffin's admission to the program occurred considerably earlier, "in the very early spring of 1979, perhaps February or March of 1979." Transcript, 6/10/1987, at 110. The latter statement is inconsistent with the testimony at the same proceeding of Dolores M. Troiani, an assistant district attorney with the Chester County District Attorney's Office who was involved in Johnston's prosecution, that her office had tried to place him in the witness protection program in April 1979 but that he had not been placed in the program because "[t]hey felt that he was going to be a witness too often and it would be too expensive to transport him." Transcript, 5/27/87, at 128.

certain that *Ouimette*'s dictum resonates in Johnston's favor. But it may.

IV

Judge Rueter's order denying Johnston's discovery motion stated:

> Petitioner has not explained why he failed in state proceedings to try to discover and present the evidence now sought in this federal proceeding. Furthermore, the facts sought by the discovery requests were disproved at the state court hearings held on May 26, May 27 and June 10, 1987. *See United States v. Wilson,* 901 F.2d 378, 381–382 (4th Cir.1990); *Byrd v. Armontrout,* 880 F.2d 1, 7 (8th Cir.1989), *cert. denied,* 494 U.S. 1019 [110 S.Ct. 1326, 108 L.Ed.2d 501] (1990); *Hoffa v. United States,* 471 F.2d 391, 394 (6th Cir.), *cert. denied,* 414 U.S. 880 [94 S.Ct. 159, 38 L.Ed.2d 125] (1973); *Gilday v. Callahan,* 99 F.R.D. 308, 309 (D.[C.] Mass.1983).

Judge Rueter's concise order appears to incorporate—or to at least imply—no less than three legal theories; I will consider them in sequence:

The first is that the question whether a "deal" existed has been decided by the state court, and that this court is bound to defer to that court's finding under 28 U.S.C. § 2254(d). It is true that the 1987 hearing before Judge Sugerman considered at length whether a "deal" existed, that testimony given at that hearing by Griffin, his attorney, and the two attorneys who prosecuted Johnston indicated that it did not, and that Judge Sugerman found that there had been no "deal." However, if the conditions for admission to the federal witness protection program are as *Ouimette* suggests, Griffin's presence in that program would appear to provide significant evidence that a "deal" did exist. The hearing before Judge Sugerman did not develop any facts as to the circumstances or conditions of Griffin's admission to the federal witness protection program. This would appear to bring Johnston's claim within § 2254(d)(3), which provides that the presumption of correctness of state findings of fact does not apply to cases in which "the material facts were not adequately developed in the State court hearing." *See Smith v.*

*Freeman,* 892 F.2d 331, 338–40 (3rd Cir. 1990). If the hearing's failure to address the circumstances of Griffin's admission to the witness protection program were attributable to Johnston's "inexcusable neglect," he might be barred from seeking to raise that issue before this court. *See Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963) ("If, for any reason not attributable to the inexcusable neglect of petitioner ... evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, a federal hearing is compelled."); *Smith,* 892 F.2d at 340. Johnston's omission seems excusable, however. The federal government's practices in admitting persons to its witness protection program are far from common knowledge. Moreover, *Ouimette,* the case that brought to Johnston's attention the possible significance of Griffin's admission to the witness protection program, was decided in 1991, well after the hearing before Judge Sugerman.

Judge Rueter's order also states that Johnston's request should be barred because Johnston did not seek to discover and present the evidence at issue in the courts of Pennsylvania. In support of this proposition, Judge Rueter cites *Byrd,* a case in which the Eighth Circuit found that a habeas corpus petitioner's discovery request was properly denied because the petitioner could have presented evidence in support of the underlying claim to the state courts, and had not, so that his claim was barred by the exhaustion doctrine. 880 F.2d at 7. Johnston's situation is quite different from that of the petitioner in *Byrd.* Johnston did present the courts of Pennsylvania with evidence as to his claim that there was a "deal" between Griffin and the Commonwealth, and now seeks to supplement that evidence. The Supreme Court has found that the supplementation of a factual record in this manner does not violate the exhaustion requirement. *See Vasquez v. Hillery,* 474 U.S. 254, 257–58, 106 S.Ct. 617, 620–21, 88 L.Ed.2d 598 (1986) ("We have never held that presentation of additional facts to the district court, pursuant to that court's directions, evades the exhaustion requirement when the prisoner has presented

the substance of his claim to the state courts.").

Judge Rueter's final ground for denying Johnston's discovery request is indicated by his citation of *United States v. Wilson*: the reference to *Wilson* evidently signifies that discovery would be purposeless because any evidence that it revealed would not "be material in the sense of creating a reasonable probability of a different outcome at trial." *See Wilson*, 901 F.2d at 382. Judge Rueter's Report and Recommendation—on which I have yet, of course, to rule—finds that there was one benefit conferred upon Mr. Johnston that should have been disclosed by the Commonwealth. This is "Griffin's receipt of $300 in relocation expenses and his release from incarceration at the request of the Commonwealth," which, Judge Rueter says, "should have been disclosed by the prosecution as potential impeachment material." R & R at 29. Although Judge Rueter's R & R suggests that this failure could not have affected the jury's verdict, *see id.* at 31, the possible existence of two categories of undisclosed impeachment material, rather than one, would necessarily make this a more difficult question. Indeed, the existence of two categories of undisclosed impeachment material might well raise questions as to whether there was yet more such material.[2]

Federal Rule of Civil Procedure 72(a), the rule governing appeals from nondispositive orders by magistrate judges, directs district courts to "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." The foregoing analysis points to the possibility that this standard has been met in this case. I note, however, that there is at least some doubt as to one element of this analysis— namely, the proposition that, as *Ouimette* suggests, a person is (or, in 1979 or 1980, was) unlikely to be admitted into the federal witness protection program without some as-surances as to the future disposition of criminal charges pending against them. The petitioner's discovery requests do not seek to investigate this issue directly. Thus, before deciding whether Judge Rueter's order should be set aside and discovery permitted, I believe that it is appropriate to investigate whether *Ouimette*'s statement is correct. I will therefore provide a two-week period in which any party may make submissions addressing whether, in 1979 or 1980, a witness's admission to the federal witness protection program was likely to be conditioned upon assurances as to the future status of any criminal charges pending against the witness in question. I will also permit the United States Department of Justice to make a submission addressing this question, if it chooses to do so. Once those submissions have been made, I will rule on Johnston's motion.

An appropriate order accompanies this memorandum.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The parties may, by March 22, 1996, make submissions addressing whether, in 1979 or 1980, a witness's admission to the federal witness protection program was likely to be conditioned upon assurances as to the future status of any criminal charges pending against the witness in question.

2. The United States Department of Justice is given leave, it it chooses to do so, to file a memorandum as *amicus curiae* addressing the same question. A copy of this order, together with the accompanying memorandum, shall be sent to the United States Department of Justice via the Office of the United States Attorney for the Eastern District of Pennsylvania. If the Department of Justice chooses to make a submission, it shall do so by March 22, 1996.

---

**2.** For instance, Judge Rueter's R & R finds that an immunity agreement had been concluded between Griffin and federal officials, and that the existence of this agreement was not disclosed to Johnston's defense attorney. Judge Rueter concludes, however, that the state officials who prosecuted Johnston were not obliged to disclose this agreement, because there is no evidence that they were aware of its existence and because such knowledge should not be imputed to them as a matter of law. R & R at 39. Judge Rueter's (or my) analysis of this question might be altered were it to appear that other impeachment evidence had intentionally not been disclosed to the defense.

This court will defer ruling upon the petitioner's appeal of Magistrate Judge Rueter's October 2, 1995 order until after March 22, 1996.